(4 Misc. Rep. 612.)

### STRAUS v. VOGT.

(Superior Court of New York City, General Term.   July 3, 1893.)

ATTACHMENT—AFFIDAVITS.

It appeared from the affidavits for an attachment that at different times within a period of six months defendant induced plaintiff to sell him goods by representations that he (defendant) was doing a good business, that

the prospects were good, and that he was making money. It further appeared that about two weeks after making such representations defendant called a meeting of his creditors, and that his attorney stated that he could pay his creditors only about 25 cents on the dollar. An affidavit made by defendant's former bookkeeper stated that shortly before the transactions with plaintiff defendant's stock of goods was worth about $30,000, that it was apparently of the same value just before the call for a meeting of creditors, and that about the time of the call defendant told him his stock was worth only $3,000, and that was all his creditors would get out of it. *Held* sufficient to sustain an attachment, on the ground that defendant was disposing of his property with intent to defraud creditors.

Appeal from special term.

Action by Ferdinand A. Straus against John Henry Vogt. From an order denying a motion to vacate an attachment against defendant's property, defendant appeals. Affirmed.

For appeal from order denying application of defendant assignee, see 24 N. Y. Supp. 483.

The affidavits on which the attachment was granted are as follows:

"Ferdinand A. Straus, of said city, being duly sworn, deposes and says that he is the plaintiff above named. That the above-named defendant is justly and truly indebted to said plaintiff in the sum of four thousand three hundred and forty-nine 83-100 dollars ($4,349.83) upon the following facts: That between the month of September, 1892, and the 21st day of March, 1893, plaintiff sold and delivered to the defendant, at his special instance and request, certain goods, wares, and merchandise, consisting of silk, cotton, and worsted yarns, at and for the agreed price and sum of $4,349.83, which said sum defendant promised and agreed to pay therefor, but has failed so to do, and no part thereof has been paid. That the plaintiff is justly entitled to recover from the defendant said sum of $4,349.83 over and above all counterclaims known to said plaintiff. That the defendant now is, and for a number of years last past was, engaged in business as a manufacturer of braids and trimmings at No. 270 Bowery, in the city of New York. That the defendant, during the period above mentioned, frequently called at deponent's place or business at Nos. 93 and 95 Green street, New York city, for the purpose of purchasing goods, and on frequent occasions during said visits matters were spoken of and discussed between the parties in reference to business; and in January last, when defendant called at deponent's place of business, he asked him how business was, and he replied, 'Fairly good,' and that he expected a good spring season. That during said month of January the defendant purchased a large item of goods, amounting to one thousand two hundred and forty-five 83-100 dollars, ($1,245.83,) which was the largest item purchased in any one month for a long time. That the goods were sold upon the representation and statements which the defendant had made to the plaintiff, his manager, and clerk that the business was fairly good, and that he was making money. The defendant, in the month of February, again called at the place of business of deponent on several occasions, for the purpose of selecting and purchasing goods, which he did, and on almost every occasion when he so called business affairs were discussed, and to all inquiries as to how he was doing the defendant would invariably reply that he was doing 'fairly good,' and as well as could be expected. Most of the conversations referred to were in German, and at no time did the defendant intimate or complain that business was poor, but, on the contrary, would always give the impression, from the conversations so had, that he was doing a profitable business, and well able to pay his merchandise accounts. Defendant also frequently told deponent that he had a large and valuable stock of goods, and valuable machinery, and as far back as October last, and ever since, he said: 'I am doing very well, and am doing my share of business. I have some new specialties, and expect to make plenty of money this coming season.' The plaintiff was in the habit on

every occasion when he met the defendant to speak of business, for the purpose of ascertaining for his own satisfaction, and so as to enable him to judge of the amount of credit which should be given to the defendant, how he stood financially. That at the conversation had in October last defendant said he had done so well in business that he purchased a house in Brooklyn, and intended to live there. In February last—about the 15th—deponent asked said defendant to pay something on account of said indebtedness, to which he replied: 'I will pay your account soon. Some of my customers are a little slow in paying, but I will pay something very soon.' The first intimation that deponent had that the said defendant was financially embarrassed was on the afternoon of March 24th last, when he received the following notice:

"'Office of John H. Vogt, 270 Bowery, New York, March 23, 1893.

"'Dear Sir: A meeting of my creditors will be held at the office of my attorney, Eugene H. Pomeroy, Esq., No. 156 Broadway, room 22, on Monday next, March 27th, at three o'clock in the afternoon, to hear the accountant's report, and determine what action shall be taken in my affairs. You are particularly requested to be present.

"'Very truly yours,　　　　　　　　　　　　　John H. Vogt.'

"The defendant, in several of the conversations referred to, told deponent that he never figured his machinery, which he claimed to be very valuable, as a part of his assets, or took it into consideration in figuring his liabilities on merchandise account, for the reason that it was paid for out of the profits of the business; and also frequently said that the profit of a manufacturer in his line of business ought never to be less than one-third, and that, if all manufacturers would figure that way in that particular line of merchandise which he was manufacturing, that every one in the trade would do well, and make plenty of money. That on March 7th last deponent met defendant at the Mechanics' and Traders' Bank, of which deponent is a director, and where defendant keeps his bank account, and in conversation again asked him how his business was, and how he was getting along, to which the defendant replied: 'I am doing my share of business, and am doing as well as any one else in my line. I have sustained no loss of any account in a long time.' Deponent then jokingly said: 'The braid people, Mr. Vogt, have been getting rich. Some of them did not have anything when they went in business two or three years ago, but it seems they have been making a great deal of money lately;' to which defendant replied, 'Well, I have got my share of the business, and I am not poor by any means.' That the defendant continued to purchase goods until the day after the date of the circular above referred to, although the merchandise which he purchased on the morning of the 24th of March, and for which he sent an order, a copy of which is hereto annexed, was returned by him late in the afternoon of that day, and at about the time that the notice above mentioned was received by mail. Deponent thereupon immediately sent the notice to his counsel, Charles A. Hess, and requested him to ascertain of the defendant's attorney the financial condition of the defendant, which, as deponent has been informed and believes, said Hess did, and ascertained from said Pomeroy that the defendant's liabilities were about $31,000.00, and his assets about $20,000.00 or $21,000.00. That his assets were made up as follows: Book accounts considered good, $12,000.00; cash on hand, $3,000.00; merchandise on hand, $3,000.00; and machinery, about $3,000.00. The deponent was also informed by his counsel that the defendant had contemplated making an assignment for the benefit of his creditors, in which it was his intention to make preferences to some of his (defendant's) children for money alleged to have been loaned to the defendant by them, and which it was said they inherited from their mother; but by the advice of Mr. Pomeroy this was not done, and that the notice aforementioned was sent instead. Deponent was informed by his said counsel that Mr. Pomeroy had informed him that the defendant would only be able to pay twenty or twenty-five cents on the dollar of his indebtedness, but deponent verily believes that the said defendant is well able to pay in full all his liabilities, for the reason that in the past few months he purchased merchandise in large quantities, and for a

very large amount. That he has a number of merchandise creditors, no less than fifteen or twenty, of whom he constantly purchased goods up to within a recent date. That the credit which the defendant gave his customers was of but short duration, as he had been informed by the defendant himself; and his indebtedness to deponent and the firm of Messrs. Abig & Rusche amounts to about nine thousand dollars. That his indebtedness to other merchandise creditors'in all probability will exceed twenty thousand dollars, all of which goods were purchased by the defendant within a brief period of time. That his cash on hand and in bank on Saturday last was about eleven hundred dollars. That the payments made by him within the past three weeks, judging from the checks which deponent has seen and examined in the Mechanics' and Traders' Bank, are very small; and that, if the defendant now has but three thousand dollars in value or merchandise on hand, he must have secretly disposed of or sold the same, and, if so, he has failed to pay the money therefor into the business. That the defendant undoubtedly has been doing a good and prosperous business, for the reason that within a period of less than one year or thereabouts he has leased the premises adjoining his lots on the Bowery and fronting on Elizabeth street for the purpose of enabling him to enlarge his business, and to manufacture to a greater extent. That the machinery necessary to be used in the business carried on by the defendant is intricate and expensive, and is worth far in excess of the amount of three thousand dollars, as stated by defendant's attorney to Mr. Hess. That the defendant frequently told deponent that the goods which he purchased were immediately made up and manufactured by him in braids and trimmings, to be sold at regular seasons during the year; and if the profits which the defendant claims to have made were one-third or 25 per cent., and doing a 'fairly good' and prosperous business, his assets should exceed his liabilities by at least twenty-five per cent. That the defendant continued to purchase and did receive merchandise from deponent up to and including the 21st day of March last past. That from the facts within the personal knowledge of deponent, as hereinbefore stated, and the reports made to him by his counsel, he verily believes that the defendant has secreted much of his property and assets for the purpose of hindering, delaying, and cheating his creditors. That deponent knows of no unusual losses which the defendant could have suffered in his business or otherwise, or by fire, and, if he has, he did so knowingly, by persistently denying and refusing to tell deponent the true facts as to his financial standing, and made representations which were false and untrue. That if he was unable to pay his creditors in full he must have had knowledge of the fact long before this, in which event he must have concealed the truth; otherwise deponent would not have sold him the merchandise referred to, or given him the credit which he has. That deponent is about to commence an action, and the annexed or accompanying summons has been issued. Wherefore deponent asks that a warrant of attachment may issue against the property of the defendant. That no previous application has been made for such warrant."

"Lionel F. Straus, being duly sworn, deposes and says that he is a clerk and salesman in the business of the plaintiff. That he has frequently seen the defendant at the place of business of the plaintiff, and overheard many of the conversations referred to in the affidavit of the plaintiff, all of which were held in the German language. That the defendant repeatedly said in deponent's presence that his business was 'fairly good' or 'good,' and that he was getting his share of the business, and he distinctly remembers the occasion of the conversation referred to by the plaintiff in his affidavit when the defendant informed the plaintiff in his presence that business was 'good,' and that he had purchased a house in Brooklyn, where he intended to reside. That on the 24th day of March last past, after the receipt of the notice calling a meeting of the creditors of the defendant, referred to in the affidavit of Mr. Straus, he called upon the firm of Messrs. Moeller & Litauer, who do business at No. 109 Green street, New York city, who are one of the creditors of the defendant, and they informed deponent that they had written to the defendant in the early part of last week, asking for payment of their account, to which the defendant replied by letter, saying that he would pay shortly, but accounts were coming in slowly, and that by the first of the

month he would be able to pay. That in all the conversations which the deponent overheard and in which he took part he never heard the defendant complain that business was poor."

"Charles A. Hess, being duly sworn, deposes and says that he is a member of the firm of Hess, Townsend and McClelland, attorneys at law, and is counsel for the plaintiff above named, and has been for several years last past. That on the evening of the 24th instant plaintiff called at the residence of deponent for the purpose of consulting him in reference to the circular, a copy of which is made a part of the affidavit of the plaintiff, and requested him to call to see Mr. Pomeroy, the defendant's attorney, for the purpose of ascertaining the purpose and object of the meeting referred to, and, if possible, to secure a statement of the defendant's financial condition. This deponent proceeded to do, and on Saturday afternoon, the 25th instant, he called at the office of Mr. Pomeroy, No. 156 Broadway, New York city, and informed him of the subject of his visit. That said Pomeroy unhesitatingly and without reserve informed deponent that the defendant had been in a bad way financially for a year or more last past; that his financial matters were in a bad shape; that he was only able to pay twenty or twenty-five per cent. of his indebtedness; and further said that when the defendant called to consult him in reference to his affairs he thought it advisable for the defendant to make a general assignment for the benefit of the creditors, preferring his (defendant's) children for moneys which they had loaned their father, which they had received from their mother's estate. Said Pomeroy also informed deponent that the liabilities of the defendant were about $31,-000.00, and that his assets were about $20,000.00 or $21,000.00, which were made up as follows: Book accounts considered good, $12,000.00; cash on hand, $3,000.00; merchandise on hand, $3,000.00; and value of machinery, $3,000.00. That the conversation so had was without reservation, and deponent repeated the same to his client, as near as he could remember it, and as above stated. That said Pomeroy also informed deponent that two of the largest creditors of the defendant were the plaintiff and the firm of Abig & Rusche, whose accounts would amount to about nine thousand dollars, and that there were many other creditors. Deponent asked said Pomeroy to select the plaintiff as assignee for the benefit of the creditors if a general assignment was to be made, which he said he could not do, because, if a general assignment had to be made, a certain individual, whose name deponent cannot now recall, would be selected as the assignee, and, if he declined to serve, then one Thomas was to be selected, and, if he declined to act in that capacity, he thought there would be no trouble in their agreeing upon the selection of the plaintiff as such assignee. Deponent was thereupon instructed by the plaintiff to commence legal proceedings for his protection. That at the time of the delivery to deponent of the notice referred to the plaintiff informed deponent in substance of the material facts alleged in his affidavit."

"David Nussbaum, being duly sworn, deposes and says that he is engaged in business with the defendant as general manager. That he has read the affidavit of the plaintiff hereto annexed. That he was present at many of the interviews referred to in said affidavit by Mr. Straus, and has frequently heard the defendant say that his business was 'fairly good' or 'good,' and frequently heard him say that he could not complain; that he was doing as well as his competitors, and getting his share of the business. He also remembers a conversation which took place between the defendant and the plaintiff, when the defendant said that a manufacturer in his line of business ought to make at least one-third profit on the goods that were sold. Deponent particularly remembers a conversation which he had with the defendant in the store of the plaintiff some time in the latter part of February, or the first week in March, and deponent asked the defendant, 'How is business?' to which the defendant replied: 'I cannot complain. It is about the same as usual, and we do our share of it.' All of the conversations that deponent overheard were in the German language, and on almost every occasion when the defendant called at the place of business of the plaintiff the topic most discussed was the business of the defendant, and at no time

did he complain that business was poor, or that he had suffered any losses. That it is a part of deponent's duty in the business of the defendant to look after the financial and credit part of it, and at no time had he reason to suspect that the defendant was insolvent. On the contrary, the only inference that could be drawn from the conversations had with the defendant was that he was doing a prosperous and good business. That deponent on two or three occasions since September last saw the defendant at his place of business at No. 270 Bowery, and found him and his other employes, as he thought, quite busy."

The following memorandum of decision was filed by McADAM, J., on denying the motion to vacate the attachment:

"The affidavit of Egelu, the former bookkeeper of the defendant, makes out a strong case for the plaintiff. The defendant's stock in July, 1892, was estimated at from $28,000 to $30,000; collectible accounts, $8,000 to $12,000; and machinery at cost price, $20,000. Egelu swears that from his knowledge and observation the assets were about the same on March 1, 1893. He asserts that the defendant's business was fairly good, while Straus testifies that it was prosperous. The latter also states that late in March the defendant told him his stock was worth $3,000 only, and that this is all the creditors would get in that line. The question naturally suggests itself, what has become of the difference between $28,000 and $3,000? The missing $25,000 worth of stock is unaccounted for, and its disappearance unexplained. The evidence and inferences to be drawn therefrom sufficiently sustain the plaintiff's right to the attachment, and the motion to vacate it will be denied, with costs. See Wilmerding v. Mooney, 11 Abb. Pr. 283; Wilmerding v. Cohen, 8 Abb. Pr. (N. S.) 141."

Argued before FREEDMAN and GILDERSLEEVE, JJ.

Hess, Townsend & McClelland, for appellant.

E. H. Pomeroy, for respondent.

FREEDMAN, J. The affidavits upon which the attachment was granted present a sufficient case for its support on the ground that the defendant has assigned, disposed of, or secreted, or is about to assign, dispose of, or secrete, his property, with intent to defraud his creditors. The papers submitted by both parties on the motion to vacate present a sharp conflict as to the most material facts. The learned judge who heard the motion determined the issue thus raised in favor of the plaintiff, and upon a careful review of the whole case I am unable to say that he erred in his decision. True, in the course of his opinion he erroneously assumed that some witness had testified that the defendant had admitted that late in March his stock was worth $3,000 only, but, independently of that, there is sufficient evidence left upon which, together with the inferences to be drawn therefrom, the plaintiff's right to the attachment may be sustained. The order should be affirmed, with $10 costs and disbursements.